**APPALACHIAN POWER COMPANY, et al., Plaintiffs,**

v.

**William J. SADLER, et al., Defendants.**

**Civ.A. No. 1:00–1159.**

United States District Court, S.D. West Virginia, at Bluefield.

March 29, 2004.

William C. Porth, Charles R. McElwee, Charles F.W. Saffer, Robinson & McElwee, Michael Bonasso, Flaherty Sensabaugh & Bonasso, Charleston, WV, Toni M. Nesselrotte, Fairmont, WV, for plaintiffs.

Robert D. Williams, Asst. Atty. General, Heather A. Connolly, David P. Cleek, Darrell V. McGraw, Jr., Colleen A. Ford, Office of the Attorney General, Charleston, WV, for defendants.

## MEMORANDUM OPINION

FABER, Chief Judge.

### Statement of the Case

This is an action for a declaratory judgment asking the court to hold unconstitutional that provision of the election laws of West Virginia which prohibits utilities and railroads from forming political action committees or "PACS." The plaintiffs are Appalachian Power Company, Monongahela Power Company, The Potomac Edison Company and West Virginia–American Water Company, public utilities with extensive operations in West Virginia, and Norfolk Southern Railway Company and CSX Corporation, major interstate rail carriers with significant presences in West Virginia. The defendants are the Secretary of State of West Virginia who, as the state's chief election official is charged with the administration and enforcement of the election laws,[1] and William J. Sadler, Prosecuting Attorney of Mercer County,

West Virginia. Sadler is sued as representative of a class consisting of the fifty-five prosecuting attorneys in West Virginia; the prosecuting attorneys are responsible for enforcing the criminal penalty provisions of the election laws. By Order entered on September 27, 2001, the court granted plaintiffs' motion for class certification and found that Sadler would fairly and accurately protect the interests of the class.

The court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 since it involves claims arising under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

The challenged statute, West Virginia Code § 3–8–8(b)(2)(I), reads as follows:

> Public utility companies and railroad companies may not form funds or political action committees in support of political candidates or parties, and may not use corporate property, real or personal, facilities, equipment, materials or services of said utility to establish, administer or solicit contributions to such fund or political action committee.

Consistent with federal law, the election laws of West Virginia, while forbidding corporate political contributions, permit corporations to establish PACS. *See*, W. Va.Code § 3–8–8(b)(1)(c). West Virginia goes beyond corresponding federal law, however, and in the provision quoted above, excepts public utilities and railroads from the permission given other types of corporations to form PACs. Plaintiffs, two railroads and four public utilities, contend that this exception restricts their free speech rights and thereby violates the First and Fourteenth Amendments to the

---

1. When this action was filed, the Honorable Ken Hechler was Secretary of State of West Virginia. The court's Judgment Order, to accompany this Memorandum Opinion, substitutes the present incumbent, the Honorable Joe Manchin, III, for Ken Hechler, as a party defendant.

United States Constitution. Defendants respond that the challenged statute is a reasonable restriction on speech designed to prevent corruption and the appearance of corruption in the electoral process.

Before the court is plaintiffs' motion for summary judgment. The plaintiffs argue that there is no question of material fact before the court and they are entitled to judgment as a matter of law. The defendant Secretary of State has contended that there are legitimate factual inquiries precluding summary judgment, but the court has found none.[2] Accordingly, the court considers the matter ripe for judgment upon the record before it.

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. If the moving party meets this burden, according to the United States Supreme Court, "there can be no genuine issue as to any material fact, since a com-

plete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 250–51, 106 S.Ct. 2505. The opposing party must demonstrate that a triable issue of fact exists and may not rest upon mere allegations or denials. *Id.* at 252, 106 S.Ct. 2505. Defendants have offered nothing which convinces the court that a material issue exists as required by Fed. R.Civ.P. 56.

### Discussion

West Virginia Code, § 3–8–8(a) prohibits political contributions by corporations or officers, agents or other persons acting on behalf of such corporations. The rationale for restricting corporate contributions was articulated by Justice Thurgood Marshall in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 110 S.Ct. 1391,

---

**2.** Defendants contend that a factual inquiry designed to ascertain the motives and purposes of the legislature which enacted the statute in question is a necessary prerequisite to a ruling by the court on the constitutional questions at issue. In the court's opinion

such an inquiry would be a quest for an amorphous prey, since a collective legislative intent is seldom identifiable in any case. The problem is complicated by the fact that West Virginia records include little legislative history.

108 L.Ed.2d 652 (1990). Corporations enjoy an unfair political advantage, Marshall reasoned, because the resources of a business corporation are not an indication of public support for the corporation's political principles. *See id.* at 659, 110 S.Ct. 1391. Such resources reflect instead the economically motivated decisions of investors and consumers. *See id.* "The availability of these resources may make a corporation a formidable political presence, even though the power of the corporation may be no reflection of the power of its ideas." *Id.* (quoting *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 258, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986)).

Prohibitions of contributions by corporations under federal law date to a 1907 statute which banned completely contributions of money by corporations in any federal election.[3] The rationale behind the West Virginia statute in question is the same as the justification for prohibition of corporate contributions under federal law — "to avoid corruption or the perception of corruption in the election process." *See* Defendant Ken Hechler's Response to Plaintiff's Motion for Summary Judgment, p. 4.

While direct corporate contributions have long been prohibited, political contributions by corporation PACs have been allowed. The rationale for laws which permit corporate PACs is that PACs represent the ideas of the members of the PAC, not the goals of the sponsoring corporation. Contributions to the PAC are deemed voluntary and it is assumed that one contributing to a corporation's PAC, even if an officer or employee of the sponsoring corporation, will contribute only if the PAC advances the independently held views of the contributor. Thus, a corporate PAC is insulated from the perceived corrupting influence of direct corporate contributions—the concept that the contributing corporation will not necessarily reflect the political views of its agents and shareholders and therefore exert an influence that is representative of economic power, not the legitimate political power of a block of voters.

There is no question that the governmental interests offered to support the West Virginia statute in question — the avoidance of corruption and the appearance of corruption — involve suppressing communication. See *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In the realm of protected speech, the legislature is constitutionally disqualified from dictating the subjects about which a person may speak and the identity of speakers who address a given public issue. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 784–85, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Similarly, *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), relied on by the court in *Buckley,* held that any governmental action which may have the effect of curtailing the freedom to associate is subject to closest scrutiny.

Of course, all restrictions on speech are not constitutionally prohibited. A law curtailing protected speech survives, however, only if justified by a compelling state interest. Likewise, governmental action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

What is the compelling state law interest here? Defendants find it in "the unique nature of public utilities and railroads" and "the immense favorable treatment and protection they are granted by law." *See*

---

**3.** The history of federal legislation on point is summarized in the opening paragraphs of the Supreme Court's recent opinion in *McConnell v. Federal Election Commission,* —— U.S. ——, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003).

643

Defendant Ken Hechler's Response to Plaintiff's Motion for Summary Judgment at 4. Defendants cite as examples of such favorable treatment a guaranteed profit, use of the power of eminent domain and exclusive franchise rights. *See id.* The court, however, questions whether these factors sufficiently distinguish public utilities and railroads from other types of corporations as they relate to PACs. If the source of corruption is the economic power of corporations and the lack of identity of the corporation's political goals with the political principles of its owners and employees, and restriction of PACs to receiving voluntary contributions is deemed to circumvent this problem, doesn't the same analysis apply to public utilities and railroads? The court believes it does. If it does, the statutory prohibition lacks a rational basis and cannot withstand strict scrutiny.

Moreover, a law such as this which restricts free speech and the freedom to associate, must be sufficiently narrowly tailored to meet its goal. Here, ironically, the act in question is too narrow. It does not prohibit all types of businesses subject to governmental regulation or special privilege from forming PACs, only two such types of businesses. Other regulated entities such as bus lines, trucking companies and taxi cabs are not subject to the prohibition. Prohibition of corruption and the appearance of corruption with regard to corporations clothed with a public interest provides, if at all, a rational basis for the restriction only if applied across the board to all such corporations. Singling out two types only and allowing all the others to form PACs is itself irrational in the court's view.

This court is reluctant to substitute its own judgment for the legislature's. Our elected representatives speak with the voice of the people and their decisions are entitled to deference by the courts. But this court has as well a duty to uphold the existing law and that law includes the decisions of the land's highest court. Under those decisions and their rationale, West Virginia Code § 3–8–8(b)(2)(I) does not pass constitutional muster. Plaintiffs' motion for summary judgment is GRANTED.